UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ENTU AUTO SERVICES INC. | * | CIVIL NO. 6:15-1183 |
| VERSUS | * | JUDGE DOHERTY |
| PICKMYRIDE.BIZ LLC, ET AL | * | MAGISTRATE JUDGE WHITEHURST |

REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation is the Motion to Dismiss Counterclaims filed by plaintiff, ENTU Auto Services, Inc. ("ENTU"), on May 11, 2015. [rec. doc. 29]. Defendant, Timmy Hendrix, d/b/a QuickPicAuto ("Hendrix"), filed opposition on May 28, 2015. [rec. doc. 32]. ENTU filed a reply on June 22, 2015. [rec. doc. 35].

For the following reasons, I recommend that the motion [rec. doc. 29] be **DENIED**.

BACKGROUND

ENTU and Hendrix are competitors in the business of car dealership inventory management. [rec. doc. 1, Complaint, ¶ 1]. In December, 2014, Hendrix passed out price comparison sheets to two car dealerships in New Iberia. [rec. doc. 1, Exhibit A; rec. doc. 28, ¶ 5]. ENTU alleges that the statements contained in these price comparison sheets are "literally false, or at least misleading, and are intentionally meant to disparage ENTU by falsely" representing the capabilities of ENTU's services. [Complaint, ¶ 21].

On January 13, 2015, ENTU filed suit in the United States District Court for the Eastern District of Louisiana alleging claims for federal false advertising pursuant to the Lanham Act, 15 U.S.C. § 1125(a); violations of The Louisiana Unfair Trade Practices and Consumer Protection Law, LA. REV. STAT. § 15:1405 *et. seq.*; state fraud under LA. CIV. CODE art. 1953; state False Advertisement under LA. REV. STAT. § 51:411, and state trademark dilution under LA. REV. STAT. § 51:223.1.

On April 20, 2015, Hendrix filed an Answer and Counterclaim, asserting claims against ENTU

for: (1) frivolous assertion of claims under the Lanham Act, and (2) violations of the Louisiana Unfair Trade Practices Act by undertaking inappropriate actions that involve abuse of process.  [rec. doc. 28, Counterclaims].

On May 11, 2015, ENTU filed the instant Motion to Dismiss Counterclaims.  [rec. doc. 29].

**Standard for Motion to Dismiss**

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (*quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina Breaches Litig.*, 495 F.3d at 205 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Id*. (*quoting Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Twombly*, 550 U.S. at 555, 127 S.Ct. 1964-65 (citations, quotation marks, and brackets omitted).  The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*citing Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id*.

## ANALYSIS

**Lanham Act Claim for Attorney's Fees**

ENTU brought suit against Hendrix under the Lanham Act, 15 U.S.C. § 1125(a). In the counterclaim, Hendrix asserts a claim for frivolous assertion of claims, entitling him to attorney's fees under 15 U.S.C. § 1117(a)(3).

The present Trademark Act, the Lanham Act of 1946, took effect on July 5, 1947 and was intended to combine the previous Trademark Act and its numerous amendments scattered throughout the United States statutes, to eliminate confusion created by conflicting interpretations, to simplify and liberalize registration and make it more meaningful, to dispense with overly technical prohibitions, and to provide prompt and effective relief against infringement. *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat. Distribution Co., Inc.*, 520 F.3d 393, 397 (5th Cir. 2008) (*citing* 4A CALLMANN ON UNFAIR COMP., TR. & MONO. § 26:1 (4th ed.)). In addition to the usual objectives of the protection of trademarks, *i.e.*, securing to the owner the goodwill of his business and protecting the public against false and deceptively marked goods, the Act is aimed at broadening the trademark owner's rights. *Id*.

The Lanham Act codified and unified the common law on unfair competition and trademark protection, and through several amendments since its adoption in 1946, remains the principal statutory protection of trademarks. *Id.* (*citing Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 861 n. 2, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) (White, J., concurring)).

Effective in 1975, Congress amended § 35 of the Lanham Act to permit an award of reasonable attorney's fees to the prevailing party in exceptional cases. 4 CALLMANN ON UNFAIR COMP., TR. & MONO. § 23:67 (4th ed.). Section 35 of the Lanham Act, codified at 15 U.S.C. § 1117(a)(3), provides, in pertinent part:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil

> action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. . . .  The court in *exceptional cases* may award reasonable attorney fees to the prevailing party.

(emphasis added).  15 U.S.C. § 1117(a)(3).

The Lanham Act provides that a court may award the prevailing party reasonable attorney fees in "exceptional cases." *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996) (*citing* 15 U.S.C. § 1117).  Section 35 "contemplates that *when the case is over* the winning party will move the court for an award of attorney's fees upon a showing of exceptional circumstances."  (emphasis added). *Poly-Am., L.P. v. Stego Indus., L.L.C.*, 790 F.Supp.2d 546, 549 (N.D. Tex. 2011) (*quoting Exxon Corporation v. Exxene Corporation*, 696 F.2d 544, 550 (7th Cir. 1983)); *Scott v. Mego Int'l, Inc.*, 519 F. Supp. 1118, 1139 (D. Minn. 1981) (toy makers' trademark infringement dismissed after trial with leave to seek attorney's fees by later motion).  Claims for attorney's fees have also been permitted to be filed after denial of a pretrial motion. 1 FEDERAL UNFAIR COMPETITION: LANHAM ACT 43(a) § 10:13 (*citing Echo Travel Inc. v. Travel Associates*, 674 F. Supp. 656, 664 (E.D. Wis. 1987) (leave to move for attorney's fees given by trial court on denial of summary judgment).

In the Counterclaim, Hendrix alleges that the Lanham Act, at 15 U.S.C. § 1125(c)(3)(A)(i), specifically permits "advertising or promotion that permits consumers to compare goods or services." [rec. doc. 28, Counterclaim, ¶ 6].  Hendrix further asserts that the price "comparison sheet" is a "permitted advertisement, and is fair competition in the marketplace."  [rec. doc. 28, ¶ 7].  Thus, Hendrix alleges, the "unwarranted attack" by ENTU against Hendrix makes this "an exceptional case" within the meaning of 15 U.S.C. § 1117, entitling him to attorney's fees and costs "*upon the successful conclusion* of this litigation."  (emphasis added).  [rec. doc. 28, ¶¶ 8, 9].

By its Motion to Dismiss, ENTU argues that: (1) there is no cause of action for "frivolous litigation," and (2) Hendrix's counterclaim under the Lanham Act is a remedy, not a cause of action.

4

[rec. doc. 29, p. 3].  In opposition, Hendrix argues that the Lanham Act provides a remedy for attorney's fees, and that it may access that remedy through civil action.  [rec. doc. 32, pp. 5-7].

Both parties cite *Rolex Watch U.S.A., Inc. v. Hoffman*, 2012 WL 5207605 (D. Or. July 30, 2012). *report and recommendation adopted*, 2012 WL 5207601 (D. Or. Oct. 22, 2012), in support of their positions.  There, Rolex filed an unfair competition claim under 15 U.S.C. § 1125(a).  Hoffman filed a counterclaim seeking an award of attorney's fees and costs under Section 35(a)(3), alleging that Rolex brought the action "solely for the purpose of harassing and causing Defendant hardship."  *Id*. at *2.  Rolex moved to dismiss the counterclaim on the grounds that it failed to satisfy the elements of a claim for harassment.

The court construed Hoffman's counterclaim "not as attempting to allege a counterclaim for harassment, but rather as attempting to allege a 'counterclaim' for Lanham Act prevailing-party attorneys fees." *Id.* at *3.  In denying the motion to dismiss as moot, the court reasoned as follows:

> The problem with Hoffman's pleading, on this construal, is not his failure to allege facts sufficient to satisfy the necessary elements of a harassment claim, but rather the fact that Section 35(a)(3) does not purport to create a *cause of action* for prevailing-party attorney fees. Section 35(a)(3) merely authorizes the courts, in their discretion, to award such fees "in exceptional cases" only. I am aware of no authority suggesting that the court's authority to issue such fees could in any way be rendered contingent upon whether the prevailing party in a Lanham Act action pled entitlement to award of such fees, or that a party's prayer for award of such fees could properly be formalized as a claim or counterclaim in a Lanham Act litigant's pleading. In general, the prevailing party in a Lanham Act proceeding requests award of attorney fees not through a claim or counterclaim, but by filing a motion or petition for such fees following determination of the merits of the underlying Lanham Act claim or claims.
>
> Because analysis of Hoffman's purported counterclaim strongly suggests that it is not intended to allege a counterclaim for harassment but rather to serve as Hoffman's prayer for award of attorney fees should he prevail on some or all of Rolex' Lanham Act claims against him, his purported counterclaim should be construed as a prayer for relief rather than as a counterclaim, and Rolex' motion to dismiss should be denied as moot.

*Id*. at *3-4.

While this case, which is from the district court in Oregon, is not binding on this Court, the undersigned finds this authority persuasive.  The Fifth Circuit has recognized section 1117 as a

"remedy" which should be available in "exceptional cases." *Moore Business Forms, Inc. v. Ryu*, 960 F.2d 486, 491 (5th Cir. 1992) (*citing* S.Rep. No. 1400, 93rd Cong., 2d Sess., reprinted in U.S.Code Cong. & Admin.News 7132, 7133 (1974)).  Thus, this "remedy" for attorney's fees should be asserted not through a counterclaim, but by filing a motion or application for fees following determination on the merits of the underlying Lanham Act claim.

Hendrix's purported counterclaim strongly suggests that it is not intended to allege a counterclaim for frivolous assertion of claims under the Lanham Act but rather to serve as Hendrix's prayer for award of attorney's fees should Hendrix prevail on ENTU's claims against him. Accordingly, the undersigned recommends that Hendrix's purported counterclaim be construed as a prayer for relief rather than as a counterclaim and that ENTU's motion to dismiss Hendrix's claim for attorney's fees be **DENIED AS MOOT**.

**Abuse of Process**

In the Counterclaim, Hendrix alleged a claim for "violations of the Louisiana Unfair Trade Practices Act by undertaking inappropriate actions that involve abuse of process." [rec. doc. 28, Counterclaim, ¶ 1].  ENTU replies that Hendrix has not – and cannot – allege that ENTU has used the judicial process in any improper manner.  [rec. doc. 35, p. 5].

 "Abuse of process involves the misuse of a process already legally issued whereby a party attempts to obtain a result not proper under the law." *Ioppolo v. Rumana*, 581 Fed.Appx. 321, 325 (5th Cir. 2014), *cert. denied*, 135 S.Ct. 1896, 191 L.Ed.2d 764 (2015) (*citing Glotfelty v. Hart*, 2013 WL 6858285, *4 (La. App. 1 Cir. 12/27/13); *Goldstein v. Serio*, 496 So.2d 412, 416 (La. App. 4th Cir. 1986), *writs denied*, 501 So.2d 208, 209 (La. 1987)).  A cause of action for abuse of process exists in under LA. CIV. CODE art. 2315.  *Mini-Togs, Inc. v. Young*, 354 So.2d 1389 (La. App. 2nd Cir. 1978).

To prevail on an abuse of process claim in Louisiana, a plaintiff must prove each of two elements: (1) the existence of an ulterior purpose; (2) a willful act in the use of the process not proper

in the regular prosecution of the proceeding. *Almerico v. Dale*, 05-749, p. 12 (La. App. 5 Cir. 3/28/06); 927 So.2d 586, 593 (*citing Costello v. Hardy*, 02-1156, pp. 6-7 (La. App. 5 Cir. 3/25/03); 844 So.2d 212, 216).

Abuse of process involves the misuse of a process already legally issued whereby a party attempts to obtain a result not proper under the law. *Glotfelty*, 2013 WL 6858285, at *4 (*citing Goldstein*, 496 So.2d at 415). Thus, "[r]egular use of process cannot constitute abuse, even though the user was actuated by a wrongful motive, purpose, or intent, or by malice." *Waguespack, Seago & Carmichael (A PLC) v. Lincoln*, 1999-2016 (La. App. 1 Cir. 9/22/00, 8); 768 So.2d 287, 292 (*citing Mini-Togs, Inc.*, 354 So.2d at 1390); *S. Snow Mfg. Co., Inc. v. Irvin*, 2014 WL 4983489, at *8 (E.D. La. Oct. 6, 2014), *appeal dismissed* (Feb. 12, 2015), *reconsideration denied*, 2014 WL 6390281 (E.D. La. Nov. 14, 2014) (*citing Mini-Togs*, 354 So.2d at 1390 ("If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint, there is no abuse, even if the plaintiff had an ulterior motive in bringing the action.")).

In support of its abuse of process claim, Hendrix cites the following facts from its Counterclaim:

> (1) that ENTU's ulterior motive in bringing this civil action was to stifle competition; and
>
> (2) that ENTU committed willful acts in bringing this action: (i) when the Lanham Act specifically permits "advertising that permits consumers to compare good or services," 15 U.S.C. § 1125(c)(3)(A)(I); and (ii) in an improper venue causing Hendrix additional expense.

[rec. doc. 32, pp. 7-8 (citing rec. doc. 28, Counterclaim, ¶¶ 6, 4)].

The abuse of rights doctrine is a civil law concept which is rarely used in Louisiana, and applies only when one of the following conditions are met: (1) the predominant motive for exercise of the right is to cause harm; (2) there is no serious or legitimate motive for exercise of the right; (3) the exercise of the right violates moral rules, good faith, or elementary fairness; or (4) the exercise of the right is for a

7

purpose other than that for which it was granted. *Ioppolo*, 581 Fed.Appx. at 326 (*citing Steier v. Heller*, 31-733 (La. App. 2 Cir. 5/5/99); 732 So.2d 787, 790-91).

Here, Hendrix has alleged an "ulterior motive," *i.e.*, that ENTU brought this suit "as a method of unfairly competing with Hendrix in the business in which both parties are operating." [Counterclaim, ¶ 4]. Thus, the next issue is whether Hendrix has sufficiently pled the second element for an abuse of process claim, namely, a willful act in the use of the process not proper in the regular prosecution of the proceeding.

Hendrix argues that ENTU committed "willful" acts by bringing this action when the Lanham Act specifically permits "advertising that permits consumers to compare good or services," 15 U.S.C. § 1125(c)(3)(A)(i), and in filing in an improper venue causing Hendrix additional expense. [rec. doc. 32, pp. 7-8 (citing rec. doc. 28, Counterclaim, ¶¶ 6, 4)]. Courts have found abuse of process where complaints were filed in the wrong venue for the purpose of hindering access to the courts. *Bank of New Orleans v. Phillips*, 415 So.2d 973, 975 (La. App. 4th Cir. 1982) (plaintiff's intentional and knowledgeable filing in the wrong venue was tantamount to an abuse of process, and acted as a harassment to defendant and an attempt to hinder him in his access to the courts); *see also Barquis v. Merchants Collection Ass'n.*, 7 Cal.3d 94, 101 Cal.Rptr. 745, 496 P.2d 817 (1972) (finding abuse of process where complaints were filed in an improper venue for the purpose of impairing individuals' ability to defend)). Thus, the undersigned finds that Hendrix has stated a claim for abuse of process.

Accordingly, I recommend that the motion to dismiss Hendrix's counterclaim for abuse of process be **DENIED**.

## CONCLUSION

Based on the foregoing reasons, the undersigned recommends that Hendrix's purported counterclaim for frivolous assertion of claims under the Lanham Act be construed as a prayer for award of attorney's fees should Hendrix prevail on ENTU's claims against him. Accordingly, the undersigned

recommends that the Motion to Dismiss Counterclaims filed by plaintiff, ENTU Auto Services, Inc. [rec. doc. 29], be **DENIED AS MOOT** as to Hendrix's claim for attorney's fees under 15 U.S.C. § 1117(a). The undersigned further recommends that the Motion to Dismiss Counterclaims be **DENIED** as to Hendrix's counterclaim for abuse of process.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc.72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed this 5th day of October, 2015, at Lafayette, Louisiana.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE