# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

**ENTU AUTO SERVICES INC.**          *          **CIVIL NO. 6:15-1183**

**VERSUS**          *          **JUDGE DOHERTY**

**PICKMYRIDE.BIZ LLC, ET AL**          *          **MAGISTRATE JUDGE WHITEHURST**

## REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation is the Motion to Dismiss for Failure to State a Claim Pursuant to FRCP Rule 12(b)(6) filed by defendant, Timmy Hendrix d/b/a/ QuickPicAuto ("Hendrix"), on July 13, 2015.  [rec. doc. 36].  Plaintiff, ENTU Auto Services, Inc. ("ENTU"), filed opposition on August 3, 2015.  [rec. doc. 40].

This motion was initially filed as a Motion for Summary Judgment Pursuant to FRCP 56 and Motion to Dismiss for Failure to State a Claim Pursuant to FRCP Rule 12(b)(6).  [rec. doc. 36].  On August 5, 2015, ENTU filed a Rule 56(d) Motion to Continue Defendant's Motion for Summary Judgment until necessary discovery was completed.  [rec. doc. 42].  Hendrix opposed the motion.  [rec. doc. 44].  ENTU filed a reply.  [rec. doc. 48].

On August 25, 2015, Judge Doherty issued a Memorandum Ruling and Order [rec. docs. 47, 49, respectively], in which she denied the Motion to Continue Defendant's Motion for Summary Judgment [rec. doc. 42] as moot, denied the Motion for Summary Judgment [rec. doc. 36] as premature, and permitted ENTU to conduct discovery.

By Minute Entry issued August 31, 2015, Judge Doherty referred the remaining Motion for Dismiss to the undersigned for report and recommendation, stating as follows:

> This Court notes the pleading filed on July 13, 2015 [rec. doc. 36] is actually a motion for summary judgment **and** a motion to dismiss pursuant to Rule 12(b)(6).  This Court notes the portion of the motion that comprises the motion for summary judgment remains DENIED as noted in the Court's Ruling dated August 25, 2015.  However, to the extent that the motion to dismiss remains viable and pending, that motion is hereby REFERRED to the magistrate judge for report and recommendation.  The

magistrate judge shall determine whether any portion of the motion remains pending for a recommendation to this Court.

Thus, this report and recommendation is limited to the issues remaining in the motion to dismiss.

For the following reasons, the motion [rec. doc. 36] is **GRANTED IN PART AND DENIED IN PART.**

## BACKGROUND

Plaintiff, Entu Auto Services, Inc. ("ENTU"), is a Louisiana corporation.  Defendant, PICMYRIDE.BIZ, LLC, doing business as QuickPicAuto ("QuickPicAuto"), is a Louisiana limited liability company.  Defendants, Timmy Hendrix ("Hendrix") and Aubrey King ("King"), are founders and members of PICMYRIDEBIZ.  Plaintiff and defendants are competitors in the business of providing online inventory management tools to automobile dealerships.  [rec. doc. 1, Complaint, ¶ 1].

Since at least 2000, ENTU has provided automobile dealerships with comprehensive, online automotive inventory management solutions, including tools which allow dealerships to collect, enhance and distribute online data and photos regarding their inventory.  [Complaint, ¶ 7].  ENTU's inventory management services include software solutions for inventory management, photography, automobile descriptions derived from VIN codes, market analysis tools, custom window stickers, incentive and rebate tools, and custom buyer guides.  [Complaint, ¶ 8].  ENTU provides its inventory management services to automobile dealerships throughout Louisiana and in Texas and Mississippi. [Complaint, ¶ 9].

From approximately 2009 through 2013, ENTU collaborated with Hendrix to provide broad marketing services to automobile services.  [Complaint, ¶ 10].  During this period, Hendrix provided traditional marketing and advertising services, such as print, radio and television marketing, to auto dealerships.  Hendrix would solicit business from dealerships by offering his traditional marketing

services in conjunction with ENTU's online inventory management services.  During this time period, Hendrix had access to confidential information relating to ENTU's business.

In 2013, ENTU stopped collaborating with Hendrix because customers had become dissatisfied with his performance, and Hendrix forbid ENTU from working directly with customers to resolve complaints.  [Complaint, ¶ 11].

ENTU alleges, on information and belief, that in 2014, Hendrix joined with King to form PICMYRIDE.BIZ, LLC, with the intent to use the confidential information obtained during his relationship with ENTU to directly compete with ENTU.  [Complaint, ¶ 12].  In December, 2014, defendants prepared and delivered an advertisement (the "False Ad") to Louisiana automobile dealerships.  Defendants used ENTU's confidential information obtained by Hendrix to directly target ENTU's customers with the False Ad.

The False Ad purports to compare the advantages of ENTU's online inventory management services with defendant's services.  [Complaint, ¶ 15].  In "blatant falsity," the False Ad stated that the monthly subscription fee for ENTU's online management services is $375, when the correct price is actually $149.  [Complaint, ¶ 16].  The False Ad also asserts that a client's subscription to ENTU's services does not provide the client with tools that are "usable to manage your inventory," which statement is "literally false."  [Complaint, ¶ 17].

Additionally, the False Ad states that ENTU's services involve "manual upload" of automobile inventory information, while defendants' services provide "same day upload."  In reality, there is no difference between these two upload services, and this statement is "purposefully misleading and deceptive."  [Complaint, ¶ 19].  The False Ad also states that ENTU's automobile management services "uses a 3rd party vendor . . . causing inaccuracies on almost daily basis," while defendants' provide "100% accuracy with" a customer's inventory.  [Complaint, ¶ 20].  ENTU asserts that this

statement is "purposefully misleading and deceptive," because ENTU's service is "exactly as accurate" as defendants' system.

ENTU summarizes that defendants' statements regarding the comparative performance of ENTU's services to defendants' are "literally false, or at least misleading, and are intentionally meant to disparage ENTU by falsely" representing the capabilities of ENTU's services.  [Complaint, ¶ 21].

On January 13, 2015, ENTU filed suit in the United States District Court for the Eastern District of Louisiana alleging claims for federal false advertising pursuant to the Lanham Act, 15 U.S.C. § 1125(a); violations of The Louisiana Unfair Trade Practices and Consumer Protection Law, LA. REV. STAT. § 15:1405 *et. seq.*; state fraud under LA. CIV. CODE art. 1953; state False Advertisement under LA. REV. STAT. § 51:411, and state dilution under LA. REV. STAT. § 51:223.1.

On July 13, 2015, Hendrix filed a Motion for Summary Judgment Pursuant to FRCP 56 and Motion to Dismiss for Failure to State a Claim Pursuant to FRCP Rule 12(b)(6).  [rec. doc. 36].  The Motion for Summary Judgment was directed to Counts I (Lanham Act) and II (Louisiana Unfair Trade Practices Act) of ENTU's complaint, while the Motion to Dismiss was directed to Counts III (fraud ), IV (Louisiana False Advertising)[1] and V (dilution).  By Order dated August 25, 2015, Judge Doherty denied the Motion for Summary Judgment as premature.  [rec. doc. 49].

By Minute Entry dated August 31, 2015, Judge Doherty referred the Motion to Dismiss to the undersigned.  [rec. doc. 51].

### Standard for Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*,

---

[1]Count IV was dismissed by Order signed by Judge Doherty on August 18, 2015.  [rec. doc. 46].

4

495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (*quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Breaches Litig.*, 495 F.3d at 205 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* (*quoting Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555, 127 S.Ct. 1964-65 (citations, quotation marks, and brackets omitted). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*citing Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*

## ANALYSIS

In the Motion to Dismiss, Hendrix seeks dismissal of Counts III (fraud under LA. CIV. CODE art. 1953, and V (dilution under the Louisiana Anti-Dilution Statute, LA. REV. STAT. § 51:223.1). ENTU moved to voluntarily dismiss its Louisiana State Law False Advertising Claim under Count IV. [rec. doc. 40, p. 5]. Thus, only Counts III and V will be addressed.

## Count III: Fraud

Hendrix seeks dismissal of Count III for fraud under LA. CIV. CODE art. 1953. Louisiana law defines fraud by a party to a contract as follows:

> Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.

LA. CIV. CODE art. 1953.

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement for fraud claims.  Under Rule 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake."  Fed.R.Civ.P. 9(b).  "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally."  *Id.*

What constitutes particularity "will necessarily differ with the facts of each case," *Shushany v. Allwaste, Inc*., 992 F.2d 517, 521 (5th Cir. 1993) (*citing Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)), and should be determined in light of the purposes the rule is intended to serve.  *In re Ford Motor Co. Bronco II Products Liab. Litig*., 1995 WL 491155, at *6 (E.D. La. Aug. 15, 1995) (*citing Shushany*, 992 F.2d at 521).  The purposes of Rule 9(b) are to enable defendants to prepare a meaningful response, to preclude the use of a groundless claim an a pretext to discover a wrong, and to safeguard defendants from lightly made charges which might damage their reputation.  *Id.* (*citing Shushany*, 992 F.2d at 521).

Perhaps the most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading.  *Douglas v. Renola Equity Fund II, LLC*, 2014 WL 1050851, *3 (E.D. La. March 14, 2014) (*citing Hernandez v. CIBA-GEIGY Corp. USA*, 2000 WL 33187524, at *5 (S.D. Tex. Oct. 17, 2000) (*quoting* Wright & Miller, *Federal Practice & Procedure* § 1298)).  The Fifth Circuit interprets Rule 9(b) strictly, requiring plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp*., 565 F.3d 200, 207 (5th Cir. 2009) (*citing Williams v. WMX Tech., Inc*., 112 F.3d 175, 177

(5th Cir. 1997)).  In other words, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (*quoting Williams v. WMX Techs, Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)).

The requirements of Rule 9(b) are "supplemental to the Supreme Court's interpretation of Rule 8(a) requiring enough facts [taken as true] to state a claim to relief that is plausible on its face." *Lentz v. Trinchard*, 730 F.Supp.2d 567, 579 (E.D. La. 2010) (*citing U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d at 185) (*quoting Twombly*, 550 U.S. at 570)).  Further, a plaintiff may plead fraud "upon information and belief" only when the relevant facts are peculiarly within the opposing party's knowledge, and the plaintiff supports his allegations with an adequate factual basis.  *Douglas*, 2014 WL 1050851, at *4; *see also U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir.1997).  This exception "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations."  *Thompson*, 125 F.3d at 903 (*quoting Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).

State-law fraud claims, such as the one alleged by ENTU here, are subject to the pleading requirements of Rule 9(b).  *Douglas*, 2014 WL 1050851, at *4 (*citing Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)).

Here, ENTU alleges a claim for fraud against a party to a contract under LA. CIV. CODE art. 1953.  Defendants argue that because they have no contract with ENTU, plaintiff's fraud claim cannot stand.  In opposition, ENTU argues that privity of contract is not a required element for a fraud claim, citing the elements of a delictual fraud or intentional misrepresentation claim, which  are: (1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury.  *Kadlec Med. Ctr. v. Lakeview Anesthesia Assoc.*, 527 F.3d 412, 418 (5th Cir. 2008), *cert. denied*, 555 U.S. 1046 (2008).  [rec. doc. 40, pp. 3-4].

In the Complaint, however, ETNU expressly asserts a claim under article 1953, which is an action for fraud against a party to a *contract*.  (emphasis added).  [rec. doc. 1, Complaint, Count III, ¶¶ 33-39].  Pursuant to the Louisiana Civil Code, a "contract is formed by the consent of the parties established through offer and acceptance."  *Petrohawk Properties, L.P. v. Chesapeake Louisiana, L.P.*, 689 F.3d 380, 388 (5th Cir. 2012) (citing LA. CIV. CODE art. 1927).  However, "[c]onsent may be vitiated by error, fraud, or duress."  *Id*. (*citing* LA. CIV. CODE art. 1948).

An action for fraud against a party to a contract requires: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) that the error induced by the fraudulent act relates to a circumstance that substantially influenced the victim's consent to the *contract*.  (emphasis added).  *Petrohawk* , 689 F.3d at 388 (*citing Shelton v. Standard/700 Assocs*., 798 So.2d 60, 64 (La. 2001)).

Comment (c) under article 1953 provides:

Fraud, like its French equivalent, "*dol*," need not be a criminal act. Intentional fault of a quasi-delictual nature suffices to constitute the kind of fraud that *vitiates a party's consent*.

(emphasis added).  Louisiana Civil Code art. 1953.

Here, ENTU has not pled the existence of a contract between itself and defendants.  Without a contract, there cannot be an issue of fraud that "vitiates a party's consent."  Thus, ENTU cannot state a claim for fraud against a party to a contract.

Accordingly, the undersigned recommends that the motion to dismiss ENTU's claim for fraud under LA. CIV. CODE art. 1953 be **GRANTED**, and that this claim be **DISMISSED**.

## Count V: Dilution Under the Louisiana Anti-Dilution Statute

In the Complaint, ENTU requests injunctive relief under the Louisiana Anti-Dilution Statute, LA. REV. STAT. § 51:223.1, which provides as follows:

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

Defendants argue that this claim is moot, as a Consent Order was entered by the parties in which defendants agreed that they would not distribute the flier at issue to any other parties. [rec. doc. 36, p. 8]. ENTU asserts that the injunction arising from the Consent Order is preliminary in nature, and that, if ultimately successful on its claim under § 51:223.1, it will be entitled to a permanent injunction preventing defendants from further tortious conduct. [rec. doc. 40, pp. 4-5].

This case was originally filed in the Eastern District of Louisiana on January 13, 2015, and transferred to this Court on April 13, 2015. [rec. doc. 25]. In the interim, ENTU filed an Application for Temporary Restraining Order ("TRO") seeking to enjoin defendants from distributing, transmitting, publishing or circulating any written or electronically transmitted statement that:

(1)  incorrectly states or suggests pricing of ENTU's services;

(2)  compares ENTU's prices to Defendants' prices;

(3)  states or suggests that ENTU's services do not allow clients to manage client's inventory;

(4)  characterizes ENTU's services as incapable of allowing clients to manage client's inventory;

(5)  states or suggest that ENTU's services rely on "manual" uploading of data;

(6)  characterizes the uploading feature of ENTU's services as functionally different from Defendants' services;

(7)  states or suggests that ENTU's services result in inaccuracies in client's inventory as a result of ENTU's use of a third-party DMS provider;

(8)  states or suggests that ENTU's DMS provider is not certified.

[rec. doc. 4, pp. 1-2].

On January 29, 2015, the parties entered into a Consent Order enjoining defendant, Hendrix,

from engaging in the activities listed in the application for TRO *pending the final disposition of this suit*. (emphasis added). The Consent Order, which was entered by Judge Mary Ann Vial Lemmon on January 29, 2015, contains the following language:

> **IT IS FURTHER ORDERED** that the granting of this Consent Order shall not affect or prejudice any defenses of the Defendant, Timmy Hendrix, including those FED. R. CIV. P. RULE 12(b) motions contesting the personal jurisdiction and venue of this Court over Defendant with respect to the claims asserted against him in this litigation as set forth in the Motion.

Here, the Consent Order, which was agreed upon by the parties and signed by Judge Lemmon, granted ENTU the *temporary* injunctive relief sought *pending the final disposition of this suit*. (emphasis added). A permanent injunction, unlike those which are preliminary in nature, is to be granted *only after a full trial on the merits* of the particular suit. (emphasis added). *Watts v. Kroczynski*, 636 F.Supp. 792, 796 (W.D. La. 1986) (*citing Shanks v. City of Dallas, Texas*, 752 F.2d 1092, 1097 (5th Cir. 1985)); *Fund For Louisiana's Future v. Louisiana Bd. of Ethics*, 17 F.Supp.3d 562, 568 (E.D. La. 2014) (a permanent injunction is generally only granted where a full trial on the merits has occurred, or where the party seeking injunctive relief otherwise has demonstrated entitlement to judgment as a matter of law). Thus, ENTU is still entitled to pursue a permanent injunction at the appropriate posture in this case.

Accordingly, the undersigned recommends that the motion to dismiss ENTU's claim under Louisiana Anti-Dilution Statute claim under LA. REV. STAT. § 51:223.1 be **DENIED**.

## CONCLUSION

Based on the foregoing reasons, the undersigned recommends that the Motion to Dismiss [rec. doc. 36] be **GRANTED IN PART AND DENIED IN PART**, and that the fraud claim under LA. CIV. CODE art. 1953 be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc.72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 5th day of October, 2015, at Lafayette, Louisiana.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**